963 A.2d 367 (2009)
405 N.J. Super. 54
ORTHOPAEDIC ASSOCIATES a/s/o Samuel Mdigos-Mulli, Plaintiff-Appellant,
v.
The DEPARTMENT OF BANKING AND INSURANCE, First Managed Care Options, Inc., National Arbitration Association, Progressive Insurance Company, Jeffrey Lakin, M.D., Defendants-Respondents.
No. A-5591-06T2
Superior Court of New Jersey, Appellate Division.
Argued September 10, 2008.
Decided January 20, 2009.
*368 Joseph A. Massood, Wayne, argued the cause for appellant (Mr. Massood, attorney; Jamie S. Aretsky, on the brief).
Justin Walker argued the cause for respondent, Jeffrey Lakin (Piekarsky & Associates, L.L.C., attorneys; Scott B. Piekarsky, on the brief).
Paul G. Witko, Deputy Attorney General, argued the cause for respondent Department of Banking and Insurance (Anne Milgram, Attorney General, attorney; Lewis A. Scheindlin, Assistant Attorney General, of counsel; Emerald Erickson Kuepper, Deputy Attorney General, on the brief).
Stephen V. McHugh, Cherry Hill, argued the cause for respondent Progressive Insurance Company (Kent & McBride, P.C., attorneys; Mr. McHugh, on the brief).
Paul Alongi argued the cause for respondent First Managed Care Options (Alongi & Associates, L.L.C., attorneys; Mr. Alongi, on the brief).
Before Judges STERN, PAYNE and WAUGH.
The opinion of the court was delivered by
WAUGH, J.S.C. (temporarily assigned).
This appeal requires us to revisit that portion of our decision in New Jersey Coalition of Health Care Professionals, Inc. v. New Jersey Department of Banking and Insurance, Division of Insurance, 323 N.J.Super. 207, 732 A.2d 1063 (App.Div.), certif. denied, 162 N.J. 485, 744 A.2d 1208 (1999) (N.J.Coalition), that upheld the validity of personal injury protection (PIP) dispute resolution procedures, N.J.A.C. 11:3-5.1 to -5.12, governing medical review organizations (MROs) and the health care professionals (MRO physicians) utilized by them. The regulations at issue were adopted by the New Jersey Department of Banking and Insurance, Division of Insurance (DOBI), pursuant to the Automobile Insurance Cost Reduction Act (AICRA), N.J.S.A. 39:6A-1 to -35.
Plaintiff Orthopaedic Associates, as subrogee of its patient Samuel Mdigos-Mulli, contends that the MRO process, as established by the regulations and overseen by DOBI, is so inherently flawed that it violates the provisions of N.J.S.A. 39:6A-5.2, which require DOBI, in consultation with the Commissioner of Health and Senior Services, to establish standards of performance for MROs that include procedures for ensuring an "impartial review of the medical records of the injured person." More specifically, Orthopaedic Associates contends that, because MROs regularly utilize MRO physicians who also routinely perform evaluative services for insurance carriers, the required impartiality of the process is irredeemably compromised. Because we have concluded that the existing procedures, as interpreted and upheld in N.J. Coalition, supra, 323 N.J.Super. at 264-69, 732 A.2d 1063, provide a mechanism to contest the impartiality of the MRO physician, we affirm the trial court's dismissal of this action.

I
This case has its origins in an automobile accident that took place on April 2, 2001. Mdigos-Mulli sustained an injury as a result of the accident. He sought and received PIP benefits from his automobile insurer at the time of the accident, defendant Progressive Insurance Company (Progressive).
Following the April 2001 accident, Mdigos-Mulli received conservative treatment for injuries to his right and left shoulders and to his cervical and lumbar spine. In *369 May 2001, he underwent an MRI of his right shoulder, which the radiologist interpreted as normal. Bryan Massoud, M.D., a board certified orthopedic surgeon affiliated with Orthopaedic Associates and one of Mdigos-Mulli's treating physicians, reviewed the films and diagnosed hypertrophic changes in the acromioclavicular (AC) joint of the right shoulder.
Mdigos-Mulli was involved in a second automobile accident in November 2002. He alleged, however, that the pain in his right shoulder had not subsided prior to the November 2002 accident. Shortly after the second accident, on November 12, 2002, Mdigos-Mulli had a second MRI of the right shoulder. The radiologist interpreted the second MRI as revealing rightshoulder hypertrophic changes in the AC joint, which was essentially the diagnosis reached by Massoud based upon the first MRI.
In December 2003, Massoud performed arthroscopic rightshoulder surgery on Mdigos-Mulli at the Saddle Brook Surgicenter. In January 2004, Orthopaedic Associates submitted a request for payment for its services rendered in connection with the surgery to Progressive, the insurer responsible for PIP benefits arising out of the April 2001 accident. Progressive refused payment, arguing that the rightshoulder problem was not a result of the April 2001 accident. It relied on a defense examination performed in September 2001, prior to the second accident, which concluded that no further treatment was required, and a peer review examination, conducted in February 2004, which concluded that the surgery was not medically necessary and, in any event, was not related to the first accident.[1]
On April 29, 2004, Orthopaedic Associates filed a demand for arbitration with defendant National Arbitration Forum Association (NAF), which is the dispute resolution organization (DRO) chosen by DOBI pursuant to N.J.S.A. 39:6A-5.1(b). In June 2004, Progressive entered an appearance and the matter was scheduled for arbitration in September 2004. On August 17, 2004, defense counsel requested that the matter be submitted for an MRO review and that the arbitration be adjourned pending receipt of the MRO physician's report. Orthopaedic Associates objected to the request for an MRO review as untimely, but NAF granted the request for an adjournment and directed that there be an MRO review.
In December 2004, NAF provided Orthopaedic Associates with a copy of the MRO report and identified the MRO physician as defendant Jeffrey Lakin, M.D.[2] Lakin concluded that Mdigos-Mulli's right-shoulder injury was not related to the first accident, but "most likely secondary to some event after, the [first accident]," noting that there were two subsequent accidents.[3]
In letters to both NAF and DOBI, Orthopaedic Associates objected to any consideration *370 of Lakin's MRO report on the grounds that Lakin had a conflict of interest arising from the fact that he performed independent medical examinations and peer reviews for insurance companies in PIP and other matters. DOBI advised NAF to contact defendant First Managed Care Options (First MCO), the MRO organization assigned to provide the MRO review, about the request for Lakin's disqualification. In the interim, the arbitration was again adjourned.
Orthopaedic Associates contacted DOBI and NAF in June 2005, stating that it had not received any response to its application to disqualify Lakin. In July 2005, NAF advised Orthopaedic Associates that DOBI had instructed it that a decision on whether to disqualify Lakin would be made by First MCO. In November 2005, Orthopaedic Associates wrote to NAF, stating that it had not received any decision from DOBI or First MCO regarding its application to disqualify Lakin. The arbitration was again adjourned and rescheduled for May 2006. In December 2005, NAF advised Orthopaedic Associates to submit its application to disqualify Lakin directly to First MCO. Orthopaedic Associates complied.
On December 16, 2005, NAF informed Orthopaedic Associates that First MCO had reviewed Orthopaedic Associates' application to disqualify Lakin and determined that there was no conflict of interest and that Lakin would not be disqualified. First MCO apparently never issued an explanation for its denial, at least none was received by Orthopaedic Associates and there is no such document in the record.
The arbitration was finally held on May 15, 2006. The arbitration award, which was in favor of Progressive, was entered on September 8, 2006. The dispute resolution professional (DRP) determined that "the claimant failed to successfully rebut the presumption of correctness afforded to the MRO physician." Although permitted to do so by N.J.S.A. 2A:23A-13, Orthopaedic Associates did not seek review in the Law Division of either the DRP's decision or the determination that Lakin had no conflict of interest because of his work for automobile insurers in other contexts.
Instead of seeking judicial review pursuant to N.J.S.A. 2A:23A-13, Orthopaedic Associates sought to attack the DRP's decision collaterally through the present action. On December 4, 2006, Orthopaedic Associates filed a complaint against DOBI, First MCO, NAF, Progressive, and Lakin. The complaint sought the following relief:
A. Vacating the arbitration award entered by [the] DRP [].
B. Compelling Progressive to pay Orthopaedic Associates on behalf of their insured, Samuel Mdigos-Mulli the sum of $10,572.45 together with interest, costs, and attorney's fees.
C. Barring Dr. Jeffrey Lakin [] from performing MROs as he is unqualified and conflicted pursuant to N.J.S.A. 39:6A-5.
D. Staying MRO reviews until the DOBI [] implements fair and impartial procedures for MRO reviews as required by N.J.S.A. 39:6A-5.2.
E. Barring First MCO [] from performing MROs pursuant to N.J.S.A. 39:6A-5 as First MCO [] does not meet the minimum requirements, is not currently certified by the DOBI [], the MRO process is controlled by the insurance industry, not impartial, and deprives patients of necessary medical care and payment of their medical bills.
F. Barring MRO review with the NAF for the reasons aforementioned.
G. Punitive damages.
H. For such other relief as the Court deems equitable and just.
*371 Although the first two items of relief sought in the complaint and Orthopaedics Associates' brief on appeal clearly seek to overturn the DRP's decision and compel payment by Progressive for Mdigos-Mulli's surgery, Orthopaedic Associates has taken the position in its arguments before the Law Division and before us that it is not really seeking to circumvent the DRP's decision, but is merely seeking to challenge what it argues is an unfair procedure that is violative of the fairness requirements of AICRA.
On February 21, 2007, Lakin filed a motion to dismiss the complaint pursuant to Rule 4:6-2 in lieu of filing an answer. On March 30, 2007, the motion judge granted Lakin's motion and, sua sponte, dismissed the entire complaint. Orthopaedic Associates filed a motion for reconsideration and other relief on April 20, 2007. Reconsideration was denied and all remaining cross-claims were dismissed by order dated May 16, 2007. This appeal followed.

II
Our opinion in N.J. Coalition, supra, contains a comprehensive history of New Jersey's no-fault legislation up to and including the enactment of AICRA. 323 N.J.Super. at 215-23, 732 A.2d 1063. See also Coalition for Quality Health Care v. N.J. Dep't of Banking & Ins., 348 N.J.Super. 272, 282-85, 791 A.2d 1085 (App.Div.) certif. denied, 174 N.J. 194, 803 A.2d 1165 (2002). AICRA was "comprehensive legislation designed to preserve the no-fault system, while at the same time reducing unnecessary costs which drive premiums higher." N.J.S.A. 39:6A-1.1. As set forth in the Legislature's findings and declarations of purpose, one of the concerns that led to the enactment of AICRA was that "[t]he [then] present arbitration system ha[d] not sufficiently addressed the Legislature's goal of eliminating payment for treatments and diagnostic tests which [were] not medically necessary, leading to the belief that a revised dispute resolution mechanism need[ed] to be established [to] accomplish this goal." N.J.S.A. 39:6A-1.1. See also N.J. Coalition, supra, 323 N.J.Super. at 219-20, 732 A.2d 1063 (quoting the Legislative findings and declarations in N.J.S.A. 39:6A-1.1).
Among other changes, AICRA established a procedure for the resolution of disputes among insureds, providers of medical benefits, and PIP carriers. N.J.S.A. 39:6A-5.1. The Commissioner of DOBI was authorized by AICRA: (1) to designate an organization, the DRO, to administer the dispute resolution procedure; and (2) to promulgate regulations with respect thereto. N.J.S.A. 39:6A-5.1(b). See N.J.A.C. 11:3-5.6 (setting forth procedures for the PIP dispute resolution proceedings). The arbitration decisions are made by a DRP, who is chosen through procedures established by the statute, N.J.S.A. 39:6A-5.1, and implementing regulations, N.J.A.C. 11:3-5.5. While a DRP's decision is "binding," N.J.S.A. 39:6A-5.1(b), it is nevertheless subject to limited judicial review pursuant to N.J.S.A. 2A:23A-13. N.J.A.C. 11:3-5.6(f). See Riverside Chiropractic Group v. Mercury Ins. Co., 404 N.J.Super. 228, 237, 961 A.2d 21 (App.Div.2008). See also Cynthia Craig & Daniel Pomeroy, New Jersey Auto Insurance Law § 10:2-2 at 191-92 (2009).
When the PIP-reimbursement dispute concerns "the diagnosis, the medical necessity of the treatment or diagnostic test administered to the injured person, whether the injury is causally related to the insured event or is the product of a preexisting condition, or disputes as to the appropriateness of the protocols utilized by the provider," the DRP or one of the parties *372 may seek "a determination" from an MRO. N.J.S.A. 39:6A-5.1(d). The MRO's "determination ... shall be presumed to be correct by the [DRP], which presumption may be rebutted by a preponderance of the evidence." Ibid. See also N.J. Coalition, supra, 323 N.J.Super. at 264-65, 732 A.2d 1063 (quoting N.J.S.A. 39:6A-5.1(d)).
AICRA required DOBI to establish "standards for the certification" of MROs. N.J.S.A. 39:6A-5.2(a). Those standards are required to "set forth procedures to ensure a timely and impartial review of the medical records of the injured person." Ibid. (emphasis added). See N.J.A.C. 11:3-5.8 (outlining permissible determinations for an MRO to make); N.J.A.C. 11:3-5.12 (detailing the prohibited conflicts of interest for DRPs).[4]
In reviewing the dispute-resolution regulations at issue in N.J. Coalition, supra, we noted that
Independence of the dispute resolution process was the recurring theme of statements made at the hearings [on AICRA] conducted by the Legislature's Joint Committee. To ensure this independence, former Insurance Commissioner Randall recommended that "[n]o [insurance] company would be able to engage the [medical review organization] of its choice. In fact, until it became necessary to exchange certain information, the insurance company wouldn't even know which [medical] review organization had been assigned to its case." Physicians who testified at the hearing also agreed that medical review would have to be "absolutely and totally independent."
In order to ensure the independence of medical reviewers as compelled by AICRA, the Department's regulation maintains the confidentiality of certain records and information. N.J.A.C. 11:3-5.10(g) provides that all data or information in the MRO's application for certification shall, with certain exceptions, be confidential and not disclosed to the public. The information which shall be deemed public includes the MRO's certificate of incorporation, the date of the certification and its expiration date, the MRO's address, the names of the MRO's officers and directors, and the individuals responsible for administering medical reviews. The names of all medical reviewers are available to the public.
The Department contends that in order to protect the identity of the medical reviewer from the insurer, the identity of the reviewer must also be protected from disclosure to the claimant, whether the claimant is an individual insured or a treating provider. This safeguard protects the integrity of the process and allows the medical reviewer to make an independent and fair evaluation without being subject to undue influence by either party to the dispute.
At the conclusion of the proceeding, the determination of the dispute resolution professional and the identity of the medical reviewers are available to the parties. The final decision will also be filed with the Commissioner and subject to public inspection pursuant to right-to-know laws. See 30 N.J.R. 4441, where the Department responds that final decisions will be public records available for inspection with the name of the injured party redacted in order to respect medical privacy concerns. Other documents related to individual disputes are maintained by the dispute resolution organization, but are not filed with the *373 Department. These documents are not public records, either under the common-law right-to-know or the statutory right-to-know law.
[323 N.J.Super. at 265-66, 732 A.2d 1063 (alterations in original).]
We then specifically addressed the concerns of the appellants in N.J. Coalition that the MRO process would not provide an avenue to challenge the independence of the MRO physician because the physician's identity was not revealed until after the MRO report and decision were completed and distributed to the parties.
At that time, [i.e., when the report is circulated and the MRO physician identified,] the parties to the dispute may avail themselves of the information relating to the identity and background of the medical reviewer. The parties are free to challenge the independence of the review. See the standards established in the Alternate Dispute Resolution Statute, N.J.S.A. 2A:23A-13. The independence of the medical reviewer will probably not be a significant issue in light of the stringent conflict-of-interest provisions established in the regulations. For example, N.J.A.C. 11:3-5.12 prohibits medical reviewers from having any personal and financial interest in proceedings or final determinations.
The cases cited by [the Association of Trial Lawyers of America] in its brief challenging this confidentiality procedure refer to the right of one party to the litigation to cross-examine an expert medical witness testifying for the opposing side. See e.g., State v. Smith, 101 N.J.Super. 10, 13, 242 A.2d 870 (App. Div.1968), certif. denied, 53 N.J. 577, 252 A.2d 154 (1969) ("It is elementary that a party may show bias, including hostility, of an adverse witness.") (citations omitted). The situations are dissimilar. Medical reviewers are not like expert witnesses at a trial, retained by the parties and traditionally subject to cross-examination. The medical review organization and its medical reviewers do not represent either party to a dispute. The medical reviewers are independent, akin to arbitrators or judges, but possess professional knowledge in a specialized medical field. There is no justification to cross-examine the medical reviewer just as there is none to cross-examine a judge or arbitrator. We find no contrary authority. Because the confidentiality provisions in the regulations are mandated by AICRA and fulfill legislative intent, the challenge to N.J.A.C. 11:3-5.10(g) fails.
[323 N.J.Super. at 267, 732 A.2d 1063 (emphasis added).][5]
Thus, in N.J. Coalition, we upheld the validity of the MRO process against a challenge based in large part on concerns about a potential for conflicts of interest and lack of impartiality. In doing so, we noted the Legislature's concern that the process be independent and the steps taken by the Legislature and DOBI to ensure such independence. We characterized the MRO physicians as "independent, akin to arbitrators or judges," and held that parties would be "free to challenge the independence of the review," specifically pointing to N.J.S.A. 2A:23A-13 as an avenue for doing so.
N.J.S.A. 2A:23A-13 provides for limited judicial review of an alternate dispute resolution award.
a. A party to an alternative resolution proceeding shall commence a summary *374 application in the Superior Court for its vacation, modification or correction within 45 days after the award is delivered to the applicant, or within 30 days after receipt of an award modified pursuant to subsection [N.J.S.A. 2A:23A-12(d)], unless the parties shall extend the time in writing. The award of the umpire shall become final unless the action is commenced as required by this subsection.
b. In considering an application for vacation, modification or correction, a decision of the umpire on the facts shall be final if there is substantial evidence to support that decision; provided, however, that when the application to the court is to vacate the award pursuant to paragraph (1), (2), (3), or (4) of subsection c., the court shall make an independent determination of any facts relevant thereto de novo, upon such record as may exist or as it may determine in a summary expedited proceeding as provided for by rules adopted by the Supreme Court for the purpose of acting on such applications.
c. The award shall be vacated on the application of a party who either participated in the alternative resolution proceeding or was served with a notice of intention to have alternative resolution if the court finds that the rights of that party were prejudiced by:
(1) Corruption, fraud or misconduct in procuring the award;
(2) Partiality of an umpire appointed as a neutral;

(3) In making the award, the umpire's exceeding their power or so imperfectly executing that power that a final and definite award was not made;
(4) Failure to follow the procedures set forth in this act, unless the party applying to vacate the award continued with the proceeding with notice of the defect and without objection; or
(5) The umpire's committing prejudicial error by erroneously applying law to the issues and facts presented for alternative resolution.
[Ibid. (emphasis added).]
Although the DRP is the primary "umpire" involved in the dispute resolution process at issue here, it is clear from our decision in N.J. Coalition that the MRO physician, whose decision is statutorily presumed to be correct and whom we have characterized as "akin to [an] arbitrator[]," also serves as "an umpire appointed as a neutral" for the purposes of N.J.S.A. 2A:23A-13(c)(2). Consequently, the issue of the MRO physician's impartiality, if timely raised during the arbitration proceedings, is reviewable by the Law Division in an action to review the DRP's decision brought pursuant to N.J.S.A. 2A:23A-13.[6]

III
As noted above, although Orthopaedic Associates timely raised the issue of Lakin's lack of impartiality during the dispute resolution process, it did not pursue the matter through an action to review the award in the Law Division pursuant to N.J.S.A. 2A:23A-13. Its time to do so had already expired and the DRP's decision had become final by the time it filed the *375 present action. N.J.S.A. 2A:23A-13(a). Consequently, the doctrine of res judicata bars Orthopaedic Associates from seeking to relitigate its claim against Progressive for reimbursement of the disputed PIP benefits in this action. Velasquez v. Franz, 123 N.J. 498, 505, 589 A.2d 143 (1991) ("In essence, the doctrine of res judicata provides that a cause of action between parties that has been finally determined on the merits by a tribunal having jurisdiction cannot be relitigated by those parties or their privies in a new proceeding." (citing Roberts v. Goldner, 79 N.J. 82, 85, 397 A.2d 1090 (1979))).
To the extent Orthopaedic Associates challenges the overall fairness of the MRO process, we are satisfied that the issue was decided correctly in N.J. Coalition, which generally sustained the procedures set forth in N.J.A.C. 11:3-5.[7] Providers such as Orthopaedic Associates have an avenue to challenge the impartiality of specific MRO physicians both administratively and judicially, as set forth above. That Orthopaedic Associates failed to do so with respect to its dispute with Progressive concerning the medical services rendered to Mdigos-Mulli does not render the overall system unfair.[8]
Finally, we deny Orthopaedic Associates' motion to supplement the record with documents that were not before the motion judge. In addition to the fact that such documents are not appropriately considered on appeal, R. 2:5-4(a), they concern the merits of Orthopaedic Associates' claims against Lakin, which is not properly before us.
Affirmed.
NOTES
[1] Progressive is not responsible for PIP benefits related to the second accident. Orthopaedic Associates did not seek payment, in the alternative, from the PIP carrier responsible at the time of the second accident.
[2] Pursuant to N.J.S.A. 39:6A-5.2(e), the identity of the MRO physician is not revealed to the insurer until the MRO report is received and distributed to the parties by NAF. In addition, the MRO physician does not know the identity of the insurance carrier involved in the arbitration when the MRO review is taking place. To facilitate implementation of this requirement, the identity of the MRO physician is not revealed to the claimant until the report is circulated. N.J. Coalition, supra, 323 N.J.Super. at 266, 732 A.2d 1063.
[3] On February 6, 2003, Mdigos-Mulli was involved in a third automobile accident.
[4] Pursuant to N.J.A.C. 11:3-5.9(c)(1), MRO physicians must earn at least one-half of their income from practice in their area of specialty.
[5] N.J. Coalition also addressed an additional concern about impartiality, related to the issue of random assignment of reviews to MROs. 323 N.J.Super. at 267-69, 732 A.2d 1063. The challenged regulation, N.J.A.C. 11:3-5.2, was upheld.
[6] We leave to the administrative process the question of whether the issue of impartiality of a specific MRO physician is to be made by the MRO itself or by the DRP, or both. However, we note that, because it will ultimately be subject to judicial review, the decision must be explained by the decision maker so that there will be a basis for meaningful judicial review. See DiMaria v. Bd. of Trs., 225 N.J.Super. 341, 347, 542 A.2d 498 (App.Div.), certif. denied, 113 N.J. 638, 552 A.2d 164 (1988) ("When an administrative agency's decision is not accompanied by the requisite findings of fact and conclusions of law, the usual remedy is to remand the matter to the agency to correct this deficiency.").
[7] To the extent Orthopaedic Associates was seeking damages from DOBI, its claim is barred by the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 to 12-3, specifically N.J.S.A. 59:2-3(a), (b), and N.J.S.A. 59:2-4. With respect any claims for damages against Lakin, NAF, and First MCO arising out of their participation in the adjudication of Orthopaedic Associates' claim against Progressive, the motion judge held that such claims are barred by Rule 32 of the New Jersey No-Fault Arbitration Rules (2006). Orthopaedic Associates has not challenged that immunity on appeal.
[8] To a certain extent, the criticisms raised by Orthopaedic Associates "are fundamentally disagreements with the policies expressed in AICRA and its implementing regulations," which, "[u]nder our system of government,... are made by the Legislature and implemented by the Executive." N.J. Coalition, supra, 323 N.J.Super. at 269, 732 A.2d 1063. Even in that regard, however, Orthopaedic Associates has the option of filing a petition for rulemaking. N.J.S.A. 52:14B-4(f). So, for example, it could seek an amendment to N.J.A.C. 11:3-5.12 barring physicians who routinely perform medical evaluations for one side in personal injury actions from acting as MRO physicians. See also N.J.S.A. 52:14B-8 (allowing an interested person to request a declaratory ruling from an administrative agency).