**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3972-23

CITIZENS UNITED
RECIPROCAL EXCHANGE,

    Plaintiff-Appellant,

v.

NEUROLOGICAL SURGERY
SPINE SPECIALISTS a/s/o
RASHEEDA ROBINSON,

    Defendant-Respondent.

_____

Submitted November 20, 2025 – Decided December 22, 2025

Before Judges Mawla and Marczyk.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-1008-22.

Brennan & Sponder, attorneys for appellant (Stewart M. Martinez, of counsel and on the briefs).

Law Offices of Lora B. Glick, LLC, attorney for respondent (Lora B. Glick, of counsel and on the brief).

PER CURIAM

Plaintiff Citizens United Reciprocal Exchange (CURE) appeals from the July 2, 2024 trial court order denying its application to vacate the arbitration award entered in favor of defendant Neurological Surgery Spine Specialists a/s/o Rasheeda Robinson (NSSS) under the Alternative Procedure for Dispute Resolution Act (APDRA), N.J.S.A. 2A:23A-1 to -30. Based on our review of the record and applicable legal principles, we dismiss for lack of jurisdiction.

I.

On August 11, 2016, Robinson was injured in an automobile accident when another vehicle rear-ended the car she was driving, which was owned by a CURE-insured individual, while she was stopped at a red light. Later that day, Robinson sought medical treatment at Jersey City Medical Center, reporting severe neck pain radiating up the left side of her face and lower back pain. She was given medication for her pain and discharged that same day.

In the months that followed, Robinson underwent various diagnostic procedures and medical treatments for her ongoing neck and back pain. An MRI of her cervical spine from January 2017 showed disc herniations at the C3-C4 and C4-C5 levels, and disc bulges at the C5-C6 and C6-C7 levels. Thereafter, Robinson attended physical therapy for cervical and lumbar myelopathy and radiculopathy between January and February 2017, then again from November

2

2017 to April 2018, during which time she "complain[ed] of constant cervical spine pain and stiffness . . . radiating down to [her] left hand." In June 2018, a second MRI of Robinson's cervical spine again showed disc herniations at the C3-C4 and C4-C5 levels, as well as the C5-C6 and C6-C7 levels, with a "small to moderate-sized paracentral disc extrusion" at C4-C5 that "contact[ed] the right ventral aspect of the spinal cord." An electromyography from July 2018 "revealed evidence of chronic ongoing right C5 radiculopathy."

In November 2019, Robinson presented to an urgent care facility with complaints of "neck pain and vomiting," for which she was prescribed a steroid and pain medication. Later that month, she was treated at Newark Beth Israel Hospital for "neck pain radiating to [her] head" and underwent a third MRI of her cervical spine, which an interpreting radiologist found showed disc herniations at the C3-C4, C4-C5, and C6-C7 levels, as well as disc bulges at the C5-C6 and C7-T1 levels.

Notably, on November 26, 2019, Robinson consulted Dr. John R. Cifelli of NSSS for a neurological assessment, who, after examining her and reviewing her medical history, referred her to Dr. Jose Colon at the Newark Rehabilitation Center for a cervical epidural steroid injection. That December, Dr. Colon conducted a physical examination of Robinson and determined "her symptoms

3

[we]re consistent with C3-4 and C4-5 [level] disc derangement and radiculopathy." He noted Robinson complained of "neck pain radiating to both upper extremities," rating the pain a "9/10 [o]n a scale of 0-10." On Dr. Colon's advice, Robinson received a cervical epidural steroid injection in January 2020, but she reported no improvement at a follow-up visit in February and, thus, was referred to an orthopedic spine surgeon for an evaluation.

In February 2020, NSSS submitted a precertification request to CURE for Robinson to have an office visit with Dr. Cifelli, to which CURE responded its "[p]recertification decision [wa]s pending the result of an Independent Medical Exam" (IME) evaluating whether Robinson's treatment was a medical necessity. Dr. Michael J. Giordano subsequently conducted the IME; he reviewed, among other records, the three MRI reports of Robinson's cervical spine and performed a physical examination. He diagnosed Robinson with "[a]ctive cervical strain/sprain," "[r]esolved disc herniation," "[a]ctive cervical radiculopathy," and "[c]ervical spine pain secondary to radiculopathy." Dr. Giordano noted there was "no nerve root compression by any cervical disc" and attributed Robinson's radiculopathy symptoms to "a traction injury." He further found a "causal relationship between [Robinson's] injuries and the motor vehicle accident" from August 2016 but opined she had reached "maximum medical

improvement" (MMI) and asserted no pre-existing medical conditions affected her recovery.

Based on Dr. Giordano's IME, CURE denied NSSS's precertification request for Robinson's appointment with Dr. Cifelli. NSSS appealed the denial through CURE's internal appeals process to no avail. CURE also denied NSSS's precertification request for Dr. Cifelli to perform cervical surgery on Robinson based on the IME findings.

Despite CURE's denials, Dr. Cifelli performed cervical spine surgery on Robinson in June 2020. Postoperatively, Robinson reported her symptoms had either improved or resolved. NSSS billed CURE approximately $296,258.50 for the surgery, but CURE denied payment based on the IME report's determination surgery was not a medical necessity; NSSS appealed. CURE also denied NSSS's precertification request for a second follow-up examination of Robinson in November 2020.

Having exhausted CURE's internal appeals process, NSSS filed a demand for personal injury protection (PIP) arbitration pursuant to N.J.S.A. 39:6A-5.1, seeking reimbursement of $297,928.30 for Robinson's surgery and follow-up appointments. In January 2021, CURE requested a medical review organization (MRO) perform an independent review of Robinson's medical records to assess

5

the issues of medical necessity and causation. In March 2021, the MRO issued a report by Dr. Abbott J. Krieger, who, after reviewing Robinson's records, MRIs, and the IME, concluded "the procedure performed by Dr. Cifelli was not medical[ly] necessary or causally related to" the 2016 motor vehicle accident, noting there had been "multiple gaps in treatment" between the accident and when Dr. Cifelli recommended surgery nearly four years later. Dr. Krieger agreed with the IME's conclusion there were multiple disc bulges "but no appreciable neural element compromise," and that Robinson had reached neurosurgical MMI, which he wrote was supported by her 2019 MRI.

In September 2021, the parties appeared before a dispute resolution professional (DRP) for a Forthright[1] arbitration hearing. The DRP heard testimony from Dr. Cifelli, and reviewed Robinson's prior MRI reports, Dr. Krieger's MRO report, Dr. Giordano's IME, and a rebuttal report by Dr. Cifelli dated May 30, 2021. In November 2021, the DRP provided his findings of facts and conclusions of law in a comprehensive, thirteen-page arbitration award,

---

[1] The Commissioner of Banking and Insurance has been authorized by the Legislature to designate an organization to serve as an arbitration forum for PIP disputes. N.J.S.A. 39:6A-5.1(b). Forthright currently serves in that capacity. Allstate N.J. Ins. Co. v. Carteret Comprehensive Med. Care, P.C., 480 N.J. Super. 566, 580 (App. Div. 2025); Kimba Med. Supply v. Allstate Ins. Co. of N.J., 431 N.J. Super. 463, 468 (2013).

A-3972-23

concluding NSSS had established the medical necessity of Robinson's exams and spinal surgery and ordering CURE to pay NSSS $158,388.35 in medical expense benefits. He found Dr. Cifelli's rebuttal report and testimony to be credible and detailed, noting the presumption of correctness afforded to Dr. Krieger's MRO report had been rebutted by a preponderance of the evidence.

The DRP stated Dr. Krieger failed to examine Robinson, despite being permitted to do so, "crucially hobbling his determinations." He concluded Dr. Krieger "erroneously and unfoundedly denied causation and necessity due to treatment gaps/delays, where there is no such medical standard or support, and which contradicts the Care Paths" and "also incorrectly found MMI as of [November] 2019." The DRP highlighted Dr. Cifelli's point that Robinson did not seek treatment immediately after the accident because she "did not understand PIP benefits access."

The DRP further noted Dr. Cifelli had observed Robinson's "disc herniations at C4-C5, C5-C6 and C6-C7, which were clinically and operatively confirmed, and with spinal cord contact, . . . which was consistent with the reading radiologist." He indicated the three cervical MRIs confirmed the presence of "spinal cord contacts, protrusions, and herniations." The DRP found Robinson's "surgery was appropriate, contrary to (and in rebuttal of) the MRO

physician," as Dr. Colon's pain management report showed "ongoing upper-extremities radiating pain," and the presurgical options only "worsened" Robinson's "chronic pain."

Weighing the parties' proofs, the DRP found the medical necessity of Dr. Cifelli's spinal surgery and exams had been established by a preponderance of the evidence and determined NSSS had effectively rebutted the presumption of correctness afforded to Dr. Krieger's MRO report. He did not find Dr. Krieger's report persuasive because both NSSS's and CURE's medical experts found the 2016 car accident caused Robinson's injuries, but "to the detriment of his credibility," Dr. Krieger "deemed otherwise." In contrast, the DRP found Dr. Cifelli's rebuttal report "thoroughly and credibly" detailed the deficiencies of Dr. Krieger's explanations, noting it "persuasive[ly]" "point[ed] out the flaws . . . in Dr. Krieger's [MRO] report," and concluded Dr. Cifelli's testimony was credible. Specifically, he explained:

> [Dr. Cifelli's] analysis relays the progressing, rather than, as suggested in oblique fashion by Dr. Krieger, abating, presence of disc abnormalities and cord impingement, and [Robinson's] re-presentation to the [emergency room] well after the [motor vehicle accident] with severe radiating pain symptoms, underscores that. How the multiple disc herniations resolved without surgery, given the absence of pre-existing conditions, is unindicated. Dr. C[i]felli's exams, in which persisting severe and intractable

radiating neck pain, with numbness and tingling, and objective neurological clinical findings, along with his MRI analysis that dispels that of Dr. Krieger's brief comments in detail and breadth, serve to further counter his opinion by a preponderance . . . . The lack of a shown medical standard denigrating the necessity of neurosurgery based on gaps in care is also compelling.

In March 2022, CURE appealed from the PIP arbitration award to an internal Forthright panel pursuant to N.J.S.A. 2A:23A-13, arguing the DRP erred in determining medical necessity and finding NSSS overcame the presumption of correctness afforded to the MRO report. It contended "the DRP, in making the award, exceeded his power or so imperfectly executed that power that a final and definite award was not made," N.J.S.A. 2A:23A-13(c)(3), and "committed prejudicial error by erroneously applying law to the issues and facts presented for alternative resolution," N.J.S.A. 2A:23A-13(c)(5).

On May 9, 2022, the Forthright panel unanimously affirmed the DRP's arbitration award, finding the DRP had properly considered all evidence, including Dr. Cifelli's rebuttal report, and thoroughly explained why the presumption in favor of the MRO report had been overcome. It rejected CURE's argument the DRP improperly accepted and considered the rebuttal report in violation of Forthright Rule 15, which, according to CURE, required NSSS to submit the report at the time CURE requested the MRO. The panel rejected this

argument because "[l]ogically, one cannot rebut something until such time as there is something to rebut."

The panel further determined the record supported the DRP's opinion and reasons for finding the MRO had been successfully rebutted. It indicated the DRP "specifically and thoroughly" addressed whether NSSS rebutted the presumption of correctness afforded to the MRO, and noted there was "no evidence" the DRP failed to afford that presumption to the MRO's conclusions. The panel rejected CURE's attempt to demonstrate Dr. Cifelli's report failed to rebut the MRO report because CURE only "reference[d] a difference in interpretation of a cervical MRI" by noting Dr. Krieger, unlike Dr. Cifelli, found the MRIs did not indicate nerve compression. It reasoned the DRP made a "factual determination as to which opinion [wa]s more credible or persuasive" and emphasized accepting, considering, and weighing evidence "is wholly within the purview of the DRP."

In June 2022, CURE filed a verified complaint and order to show cause seeking to vacate the DRP award and the Forthright panel award affirming the DRP. CURE alleged the DRP and panel failed to presume the correctness of the MRO report, the DRP erroneously applied the law to the issues and facts presented, and the DRP exceeded or imperfectly executed his powers in making

the award. At oral argument, CURE principally contended the presumption of correctness afforded to an MRO physician's conclusions can only be rebutted by evidence provided to the MRO, not new evidence or "extraneous or conditional information," such as Dr. Cifelli's rebuttal report, which Dr. Krieger did not review.

On July 2, 2024, the court entered an order, accompanied by a written opinion, denying CURE's application to vacate the arbitration award because CURE could not "show th[e] DRP . . . erroneously applied [the] law to the issues and facts presented." The court found CURE failed to cite any authority to support its argument NSSS "was barred from submitting its own report to rebut [the] MRO report." As such, CURE did not establish the DRP erroneously applied the law by considering and relying upon Dr. Cifelli's rebuttal report. The court further determined "when granting the arbitration award, [the] DRP . . . cited [NSSS]'s report and also made detailed findings regarding the deficits of [CURE]'s MRO report." Therefore, it "decline[d] to vacate the arbitration award."

II.

CURE contends we have jurisdiction to review this appeal because it invokes our supervisory function and raises important public policy concerns.

11

It reprises its argument the trial court should have limited the DRP's use of Dr. Cifelli's rebuttal report, avers the court failed to give proper deference to the MRO report, and asserts the court failed to conduct a de novo review. CURE also argues this court should reverse the DRP's finding of medical necessity because the MRO report was supported by the record, and the rebuttal report does not undermine the MRO's finding the surgery was not medically necessary.

CURE, as a New Jersey-based auto insurer, is required to provide PIP benefits under its policies. The New Jersey Automobile Reparation Reform Act, N.J.S.A. 39:6A-1 to -35, "mandates that automobile liability insurance policies provide PIP coverage, including payment of 'reasonable medical expenses,' N.J.S.A. 39:6A-4(a)." Cobo v. Mkt. Transition Facility, 293 N.J. Super. 374, 384 (App. Div. 1996). Disputes regarding the appropriateness and amount of PIP coverage are determined in "dispute resolution." N.J.S.A. 39:6A-5.1(a); see also Citizens United Reciprocal Exch. v. N. N.J. Orthopedic Specialists, 445 N.J. Super. 371, 376-77 (App. Div. 2016) (stating disputes between health care providers and insurers over billing covered by PIP insurance provisions are typically settled through arbitration).

The forum for PIP arbitration is the APDRA. N.J.S.A. 2A:23-13. Although proceedings under the APDRA are frequently referred to as

"arbitrations," and are indeed similar in style and substance to arbitrations, the APDRA is distinct from the Arbitration Act, N.J.S.A. 2A:23B-1 to -36. An APDRA decision is binding, subject to "vacation, modification[,] or correction" by the Superior Court in limited instances. N.J.S.A. 2A:23A-13(a). In matters where jurisdiction exists, an award may only be vacated if the rights of a party were prejudiced by:

> (1) Corruption, fraud[,] or misconduct in procuring the award;
>
> (2) Partiality of an umpire appointed as a neutral;
>
> (3) In making the award, the umpire's exceeding their power or so imperfectly executing that power that a final and definite award was not made;
>
> (4) Failure to follow the procedures set forth in [the APDRA], unless the party applying to vacate the award continued with the proceeding with notice of the defect and without objection; or
>
> (5) The umpire's committing prejudicial error by erroneously applying law to the issues and facts presented for alternative resolution.
>
> [Selective Ins. Co. of Am. v. Rothman, 414 N.J. Super. 331, 341 (App. Div. 2010) (quoting N.J.S.A. 2A:23A-13).]

N.J.S.A. 2A:23A-18(b) makes clear once the trial court, sitting as an appellate court, has issued an order "confirming, modifying[,] or correcting" a

13

decision, "[t]here shall be no further appeal or review of the judgment or decree." Our Supreme Court upheld the constitutionality of N.J.S.A. 2A:23A-18(b) in Mt. Hope Development Associates v. Mt. Hope Waterpower Project, L.P., 154 N.J. 141, 148-52 (1998). The Court ruled "the language of [the] APDRA unmistakably informs parties that by utilizing its procedures they are waiving th[eir] right" to appeal beyond the trial court, and that such a waiver generally must be enforced. Id. at 148.

While there are exceptions to the appellate bar set by N.J.S.A. 2A:23A-18(b), they are limited. There are exceptions when it is "necessary for [the Court] to carry out its 'supervisory function over the [trial] courts.'" Morel v. State Farm Ins. Co., 396 N.J. Super. 472, 475-76 (App. Div. 2007) (quoting Mt. Hope, 154 N.J. at 152). This "supervisory function" permits us to exercise appellate jurisdiction when a trial court has exceeded its jurisdiction under the APDRA. See id. at 476. As our Supreme Court instructed in Mt. Hope, although arbitration can be a favored procedure, there may be "'rare circumstances' grounded in public policy" that may warrant "limited appellate review" over trial court decisions in APDRA matters. 154 N.J. at 152 (quoting Tretina Printing, Inc. v. Fitzpatrick & Assocs., Inc., 135 N.J. 349, 364-65 (1994)). Appellate review is thus allowed "where public policy would require" it. Ibid. One

A-3972-23

example identified by the Court is a child support order, ibid.; another example is an award of attorney's fees. Allstate Ins. Co. v. Sabato, 380 N.J. Super. 463, 472-76 (App. Div. 2005).

However, "when the trial judge adheres to the statutory grounds in reversing, modifying[,] or correcting an arbitration award, we have no jurisdiction to tamper with the judge's decision or do anything other than recognize that the judge has acted within [their] jurisdiction." N.J. Citizens Underwriting Reciprocal Exch. v. Kieran Collins, D.C., LLC, 399 N.J. Super. 40, 48 (App. Div. 2008). Thus, "we review the decision of the trial judge . . . for the limited purpose of determining whether [they] exceeded the authority granted to [them] by [the] APDRA." Ibid.

A.

CURE contends this matter invokes our supervisory function because the trial judge failed to conduct a de novo review of the DRP's finding of medical necessity. The parties do not dispute CURE's application to vacate the arbitration award was premised upon allegations the DRP exceeded his powers such that a final and definite award was not made, N.J.S.A. 2A:23A-13(c)(3), and that the DRP misapplied the law and fact, N.J.S.A. 2A:23A-13(c)(5). Accordingly, pursuant to N.J.S.A. 2A:23A-13(b), the Law Division needed only

15

to make an independent determination of "any facts relevant" to CURE's application pertaining to subsection (c)(3) de novo.

CURE insists had "the judge . . . engaged in a de novo determination, the judge would have realized that some of the material facts upon which the DRP cited from the rebuttal report were inaccurate." However, its application to vacate the award did not necessitate a review of the DRP's factual findings and conclusion of medical necessity. Specifically, before the Law Division, CURE alleged the DRP "exceeded his power by erroneously applying the appropriate law, regulations, and facts to the case" because he "did not give the MRO report the presumption of correctness afforded . . . under the law" but rather weighed the credibility of Dr. Cifelli's rebuttal report and Dr. Krieger's MRO report "as if they were both expert reports." Hence, CURE's application to vacate was limited to determining whether the DRP properly considered the rebuttal report and applied the correct standard in concluding the MRO report had been rebutted. This determination did not require the Law Division to revisit the issue of medical necessity, as CURE's argument focused on a legal, rather than factual, issue.

The Law Division properly determined CURE failed to show the DRP exceeded his powers such that a final and definite award was not made, N.J.S.A.

16

2A:23A-13(c)(3), because CURE did not provide any authority to support its argument the DRP's reliance on NSSS's rebuttal report was an error. Additionally, the Law Division further found the DRP cited NSSS's report and made detailed findings as to the deficits of the MRO report. Indeed, CURE's challenge ignores the DRP's comprehensive factual findings and legal conclusions explaining the deficits of the MRO report and why the evidence rebutted the presumption of correctness to prove the medical necessity of Robinson's surgery. Again, these "detailed findings" were ultimately relied upon by the court in declining to vacate the arbitration award.

Moreover, CURE failed to cite any authority supporting its assertion the rebuttal report "should be considered . . . for the limited purpose of legal argument," rather than "as factual evidence," because it "was not submitted as evidence to the MRO." Pursuant to N.J.S.A. 39:6A-5.1(d), upon the request of a party to a PIP arbitration, the DRP must "refer the matter to a[n] [MRO] for a determination" with respect to a dispute regarding "the medical necessity of the treatment or diagnostic test administered to the injured person." "The determination of the [MRO report] on the dispute referred shall be presumed to be correct by the [DRP], which presumption may be rebutted by a preponderance of the evidence." Ibid. (emphasis added).

17

In effect, CURE asserts NSSS should have submitted Dr. Cifelli's rebuttal report to Dr. Krieger for him to consider in authoring the MRO report. CURE's reading of the statute, if adopted, would vitiate the DRP's ability to consider a contrary opinion that rebuts an MRO's determination. Instead, the rebuttal report fulfilled the statute's intended purpose by serving as evidence to rebut the presumption of correctness afforded to the MRO's determination. Furthermore, it is unclear how Dr. Cifelli's rebuttal report could have been provided to Dr. Krieger prior to the issuance of his MRO report. As the DRP panel aptly stated, "[l]ogically, one cannot rebut something until such time as there is something to rebut."

## B.

CURE next asserts we should exercise our supervisory function because the DRP erred in considering the MRO's credibility and opining the MRO report was less reliable than Dr. Cifelli's rebuttal report because Dr. Cifelli physically examined Robinson. This argument is unpersuasive, as CURE fails to cite any authority precluding the DRP from weighing the persuasiveness of the respective reports. Notably, there is no suggestion Dr. Cifelli had access to different documents or information than Dr. Krieger had when authoring his MRO report. Rather, the DRP simply found Dr. Cifelli's rebuttal report

18

"point[ed] out the flaws he perceived present in Dr. Krieger's report based on records previously presented," and "accomplished this in [a] persuasive manner." While CURE disagrees with the DRP's decision to reject Dr. Krieger's opinion regarding medical necessity and causation between the accident and injury, that alone does not suggest the DRP exceeded his powers or erroneously applied the law to the facts in reaching those conclusions.

Furthermore, CURE asserts the judge failed to address Orthopaedic Associates v. Department of Banking & Insurance, 405 N.J. Super. 54 (App. Div. 2009), and New Jersey Coalition of Health Care Professionals, Inc. v. New Jersey Department of Banking & Insurance, Division of Insurance, 323 N.J. Super. 207 (App. Div. 1999). It claims these cases stand for the proposition "that an MRO opinion is not just another expert witness but rather a decision by a trier of fact to be accepted if supported by the record and not weigh[]ed against other evidence."

We did not address the current issue before us in those cases, which were decided in the context of challenges to the validity of the PIP dispute resolution procedures utilized by the Department of Banking and Insurance. See Orthopaedic Assocs., 405 N.J. Super. at 56, 65-66; N.J. Coal., 323 N.J. Super. at 264-69. Neither case suggests a DRP must accept the MRO's determination,

which, as a practical matter, would largely nullify the DRP's role in arbitration proceedings. CURE's reliance on those cases for its assertion the MRO's decision must be accepted if supported by the record is belied by N.J.S.A. 39:6A-5.1(d), which clearly permits a party to offer evidence to rebut the presumption of correctness afforded to an MRO's determination.

C.

CURE further contends this matter raises important public policy concerns because it provides us with the opportunity to resolve a "split in the treatment of MRO reports." It asserts DRPs will sometimes defer to an MRO's decision unless it is unsupported by the record, but, on other occasions, use MRO reports as expert witness reports, weighing the evidence and argument before reaching a conclusion. CURE perceives "several problems" with the latter approach, taken by the DRP here, and urges us to adopt the former.

CURE's argument is unavailing. It finds a "split" in authority where none exists, as N.J.S.A. 39:6A-5.1(d) provides the relevant standard for addressing MRO reports in PIP arbitrations. As previously stated, upon request by a party, the DRP will "refer the matter to a[n MRO] for a determination" regarding, among other things, the medical necessity of the treatment or causation between the injury and event. N.J.S.A. 39:6A-5.1(d). Importantly, "[t]he determination

20

A-3972-23

of the [MRO] on the dispute referred shall be presumed to be correct by the [DRP], which presumption may be rebutted by a preponderance of the evidence." Ibid. That is the standard the DRP applied in this matter, which the trial court affirmed. Meaning, under the statute, an MRO report is presumed correct unless rebutted by a preponderance of the evidence, and in such instances, a DRP is statutorily authorized to find the presumption of correctness has been rebutted. Consequently, CURE's assertion—"[u]nless the MRO physician has made a glaring mistake, his unbiased determination must stand"— conflicts with the plain language of N.J.S.A. 39:6A-5.1(d). If the Legislature desired to afford MRO reports almost complete deference and limit a DRP's discretion to reject an MRO's opinion, as CURE advocates, it could have done so.

We conclude the trial judge properly exercised the authority granted under the APDRA and adhered to the statutory grounds in confirming the DRP award. Moreover, CURE failed to present an issue raising a significant public policy concern warranting our review. Accordingly, the appeal is dismissed for lack of jurisdiction pursuant to N.J.S.A. 2A:23A-18(b).

To the extent we have not specifically addressed any of CURE's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Dismissed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-3972-23